## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MED-TRANS CORPORATION,

     Plaintiff,

v.                                 CASE NO.:  3:22-cv-1139-HES-JBT

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC., d/b/a FLORIDA
BLUE, and C2C INNOVATIVE
SOLUTIONS, INC.,

     Defendants.

_____/

## DEFENDANT BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.'S MOTION TO DISMISS ORIGINAL COMPLAINT, AND MOTION TO STRIKE ATTORNEY'S FEE CLAIM

Defendant, Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"), pursuant to Rule 12(b)(6), Fed. R. Civ. P., moves the Court to dismiss the Original Complaint (Doc. 1) of Plaintiff, Med-Trans Corporation ("Med-Trans"), for failure to state a claim upon which relief can be granted, or alternatively, to enter an order denying Plaintiff's request to vacate the Independent Dispute Resolution ("IDR") award, on the grounds that (i) the filing of a complaint is improper, and (ii) the allegations of the Original Complaint are insufficient in any event. In addition, Florida Blue moves pursuant to Rule 12 (f) to strike Med-Trans's claim for attorney's

fees on the ground that there is no basis for such a claim here. In support hereof Florida Blue states:

1.     This case arises out of a single patient encounter during which Med-Trans provided air ambulance services to an insured of Florida Blue who suffered a gunshot wound in a hunting accident on January 23, 2022.

2.     Med-Trans disputed the payment amount it received from Florida Blue for these services and initiated a thirty-day open negotiation period under the No Surprises Act ("NSA") in June of 2022. During this period, the parties attempted to reach an agreement regarding the total out-of-network rate for Med-Trans's services. After these negotiations were unsuccessful, on July 22, 2022, Med-Trans formally initiated the federal IDR process established by the NSA.

3.     When Med-Trans and Florida Blue could not agree on a certified IDR entity, the Departments of Health and Human Services, Labor, and the Treasury (the "Departments") randomly[1] selected Defendant C2C Innovative Solutions, Inc. ("C2C") to review the services rendered and determine the final payment amount.

4.     Med-Trans and Florida Blue each submitted their proposed payment amount, the percentage of the qualifying payment amount (QPA) represented by the amount, and other information relevant to C2C's determination pursuant to the NSA.

---

[1]     Despite the rules providing for a random selection process, *see* 45 C.F.R. § 149.510(c)(1)(iv), Med-Trans, without any support, accuses the Departments of "assign[ing] their preferred Medicare review company, C2C, to this dispute." Complaint ¶ 49.

5.      On September 12, 2022, C2C issued its final determination selecting Florida Blue's offer as the appropriate out-of-network rate because it "best represent[ed] the value of the services at issue." Med-Trans now seeks to challenge that award by filing its Original Complaint in this Court.

6.      Med-Trans cannot pursue the relief it seeks through the filing of a complaint, as opposed to a motion under the Federal Rules of Civil Procedure, as will be discussed in more detail below.

7.      Moreover, even if the filing of a complaint were deemed proper under the circumstances, Med-Trans's Original Complaint fails to make sufficient allegations under the applicable law to challenge the arbitration award and its requested relief should be denied.

8.      Finally, Med-Trans's unsupported claim for attorney's fees in its Original Complaint should be stricken.

## MEMORANDUM OF LAW

*The Complaint is due to be dismissed for failure to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court.*

As a threshold matter, Med-Trans's Complaint is procedurally inappropriate, and attempts to improperly shift the burden to Florida Blue to present sufficient grounds for dismissal. Applications to vacate arbitration awards must instead be made as motions in which the party seeking vacatur has the burden of setting forth sufficient grounds for vacatur in its moving papers.  This is a simple function of

#180644994_v3

applying the Federal Rules of Civil Procedure, and binding precedent. Requests to vacate an arbitral award should be filed in the form of a motion as provided in Rule 7(b), Federal Rules of Civil Procedure.

Eleventh Circuit precedent clearly establishes this approach. In *O.R. Secs. v. Pro. Planning Ass'n*, 857 F.2d 742, 748 (11th Cir. 1988), the Eleventh Circuit recognized that "[t]he statutes and rules do not permit a party to initiate a challenge to an arbitration award by filing a complaint . . . [i]t is clear that such a request for relief shall be made in the form of a motion as provided in Fed. R. Civ. P. 7(b)." 857 F.2d at 745 (internal citations and quotations omitted). Rule 7(b), Federal Rules of Civil Procedure ("Rules(s)") requires that "[a] request for a court order must be made by motion." Fed. R. Civ. P 7(b)(1). Indeed, "[t]he rules of notice pleading, Fed. R. Civ. P. 8, do not apply to a proceeding to vacate an arbitration award, as <u>all relief must be sought in the form of a motion</u>." *O.R. Secs.,* 857 F.2d at 748. (emphasis added).

This Court has applied that precedent, and explained:

> The manner in which an action to vacate an arbitration award is made is obviously important, for the nature of the proceeding affects the burdens of the various parties as well as the rule of decision to be applied by the district court. For example, if an application to vacate is brought in the form of a complaint, then the burden of dismissing the complaint would be on the party defending the arbitration award, and were that party to fail at the motion to dismiss stage, the matter would develop into full scale litigation. Rejecting such an approach, the Eleventh Circuit has instructed that the proper procedure for the party seeking to vacate an arbitration award is to file a motion to vacate in

#180644994_v3

which, as the moving party, [it] would bear the burden to set forth sufficient grounds to vacate the arbitration award in [its] moving papers. This expedited judicial review process supports the well-established purpose of the FAA which is to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation.

*Belz v. Morgan Stanley Smith Barney, LLC*, No. 3:13-CV-636-J-34 MCR, 2014 WL

897048, at *2 (M.D. Fla. Mar. 6, 2014) (internal quotations omitted).

The Third Circuit Court of Appeals also recently explained that:

applications to courts under the FAA take the form of motions unless otherwise "expressly provided" in the FAA itself. 9 U.S.C. § 6. Neither FAA Section 9, which provides for confirmation of arbitration awards, nor FAA Section 10, which provides for vacatur of arbitration awards, prescribe other procedures . . . [W]e hold here that applications to vacate an arbitration award under FAA Section 10 are [] to be made as motions. *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (FAA applications for vacatur are motions); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992) (same);*O.R. Secs. v. Pro. Planning Ass'n*, 857 F.2d 742, 748 (11th Cir. 1988) (same).

*PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F. 4th 308, 312 - 313 (3d Cir.

2021).

Here, Med-Trans improperly seeks to initiate a challenge to an arbitration award by filing a Complaint. In the Complaint, Med-Trans requests that the Court enter an order vacating the arbitration award and directing C2C "to rehear this claim." *See* Complaint ¶¶ 51-52. Indeed, section 10(a) provides district courts with the authority to "*make an order* vacating the award upon application of any party" demonstrating one of the four grounds for relief. 9 U.S.C. § 10(a) (emphasis). Such

a request must be made as a motion under the Rules, however, and the Complaint should be dismissed for this reason alone.

Med-Trans Complaint is further flawed as it requests "declaratory relief."[2] If this is an effort to avoid the need to file a motion for vacatur, it is misguided. Med-Trans invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, in the opening of its Complaint and requests a declaration from the court in its "Request for Relief." Complaint ¶ 51 ("Med-Trans requests that the court vacate the arbitration award at issue and declare that . . ."). However, "[d]eclaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own." *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1195 (S.D. Fla. 2021), aff'd, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022); *see also Harris v. Florida*, No. 8:16-CV-12-T-27MAP, 2016 WL 656977, at *2 (M.D. Fla. Jan. 12, 2016) ("Plaintiff fails to state a claim … because he attempts to bring this case under the declaratory judgment act, which does not provide an independent cause of action[.]"), *report and recommendation adopted*, 2016 WL 676427 (M.D. Fla. Feb. 17, 2016). Here, Med-Trans has failed to identify any substantive cause of action entitling it to bring suit against Florida Blue, and thus the invocation of declaratory relief is improper.

---

[2]    Notably, the Complaint does not state "Declaratory Relief Requested" in its title as required by Rule 1.09 of the Local Rules of the United States District Court for the Middle District of Florida.

The Eleventh Circuit has in some instances construed complaints seeking vacatur of arbitral awards as motions to vacate. *See Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015) ("While the plaintiffs improperly included their request to vacate the arbitration award in their complaint, it was not error for the district court to construe the request as a motion."). Florida Blue suggests that here, however, given the early stage of proceedings, the perceived effects on the burden required of Med-Trans, and Med-Trans's improper request for declaratory relief, that Med-Trans should be required to start over with a properly filed motion, should it chose to proceed.  Accordingly, Med-Trans's improperly filed Complaint seeking declaratory relief should be dismissed in its entirety.

### *Judicial Review under the NSA.*

Under the NSA, "[a] determination of a certified IDR entity . . . shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9." 42 U.S.C. § 300gg-111(b)(5)(E). "Section 10(a) of Title 9" provides the grounds for vacating an arbitral award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* Significantly, the purpose of the FAA, as is all alternative dispute resolution processes, is "'to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation.'" *Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998) (citation omitted).

#180644994_v3

Indeed, "[j]udicial review of arbitration awards is 'narrowly limited,'" and the statutory framework applicable here "presumes that arbitration awards will be confirmed." *Id.*

Accordingly, the NSA, by incorporating the FAA, provides for vacatur of an IDR award only in four circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In addition, the NSA provides that a determination by an IDR entity "shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." 42 U.S.C. § 300gg-111(b)(5)(E).

In general, the NSA was enacted to protect patients from surprise medical bills for most emergency services. The Act establishes an IDR process for payment disputes between providers, such as those providing emergency air ambulance

services like Med Trans, and payors, such as Florida Blue. The Departments have certified organizations to serve as IDR entities to resolve such disputes, including C2C.

### Med-Trans's Complaint is Insufficient.

### i. C2C's Final Determination was not based on an improper presumption.

At the outset, Florida Blue notes that Med-Trans's Complaint amounts to a manifesto against the NSA and its implementation. Med-Trans spends much of the Complaint taking issue with the statutory framework as a whole: "During this process, the IDR entity (a federal contractor), without a hearing, must select one of the two offers submitted based on the position statements submitted by the parties," "[t]here is no meaningful information available to the parties to evaluate the competency or quality of the various IDR entities," "[t]he statute contains no requirements for what the person actually deciding the dispute is paid or the amount of time that must be spent reviewing the submissions or weighing the evidence," "[t]he way the Departments have implemented the No Surprises Act results in a black box approach where decisions can be made without rhyme or reason." *See* Complaint ¶¶ 17-21.

Med-Trans then implores the Court to engage in "[j]udicial review of IDR proceedings . . . to ensure that providers receive due process and are not subject to bad faith schemes and unlawful decision making." *Id.* ¶ 21. This is a case about a

9

specific arbitral award, however, not a challenge to the constitutionality or general propriety of the NSA. It is not the role of this Court to hear and entertain these types of grievances about the statutory construct of the NSA and throw it out over the considered enactment by Congress and development of regulations by the Departments, as Med-Trans requests, but instead to interpret and apply the NSA as written to the circumstances before it.

With respect to the specific circumstances presented here, Med-Trans contends that in determining the final payment amount C2C "applied an illegal presumption in favor of the [Qualifying Payment Amount ("QPA")]."[3] *Id.* ¶ 43. Med-Trans points out that two months prior to the award the requirement that a presumption in favor of the QPA was invalidated by a district court in Texas. *Id.* ¶ 27; *see Lifenet Inc. v. U.S. Dept. of Health & Human Servs., et al.*, No. 6:22-cv-00162-JDK, 2022 WL 2959715 at *10 (E.D. Tex., June 26, 2022). Med-Trans provides no reason to believe that C2C was unaware of this case, and no support for its contention that C2C applied such a presumption. Med-Trans merely complains that C2C selected Florida Blue's offer.

---

[3]      The Qualifying Payment Amount ("QPA") is the amount calculated using the methodology provided for in 45 CFR § 149.140(c).

Indeed, Med-Trans omits that following the decision in *Lifenet*, on July 28, 2022, CMS issued the following statement as a result of that ruling directing certified IDR entities to comply with the court's judgment and order:

> On July 26, 2022, the U.S. District Court for the Eastern District of Texas issued a judgment and order in *LifeNet, Inc v. United States Department of Health and Human Services (LifeNet)*, vacating the final sentences of 45 CFR 149.520(b)(2), 26 CFR 54.9817–2T(b)(2), and 29 CFR 2590.717–2 (b)(2), which are parallel provisions governing the Federal Independent Dispute Resolution (IDR) process applicable to air ambulance payment disputes. The sentence the court vacated states, "This information must also clearly demonstrate that the qualifying payment amount is materially different from the appropriate out-of-network rate."
>
> **As a result of the *LifeNet* decision, effective July 26, 2022, certified IDR entities may not apply the vacated standard in reaching a payment determination in any payment dispute related to air ambulance services.** The Departments are directing certified IDR entities to comply with the court's judgment and order and are in the process of updating Federal IDR program guidance and related documents to make them consistent with the *LifeNet* decision. The Departments will issue these updates in the near future.

Ctrs. for Medicaid & Medicare Servs., No Surprises Act: Payment disputes between providers and health plans, Notices (Jul. 28, 2022)[4](emphasis in original). There is no plausible reason alleged to suggest that C2C would fail to follow this directive.

Med-Trans misconstrues C2C's final award to suggest it applied a presumption in favor of the QPA by selectively quoting from C2C's determination. Upon a reading of the entirety of the award Med-Trans's contention is without merit.

---

[4]     https://www.cms.gov/nosurprises/help-resolve-payment-disputes/payment-disputes-between-providers-and-health-plans.

#180644994_v3

Med-Trans relies on one portion of C2C's Final Determination, and then posits that C2C applied an illegal presumption in favor of the QPA because it required Med-Trans to prove "that a higher OON rate than the QPA was warranted.'" Complaint ¶ 43. This interpretation is baseless. C2C's reference to a "higher rate" was merely in reference to the higher OON rate between the two offers without any reference to the offers relation to the QPA. Further, Med-Trans omits from its Complaint C2C's ultimate conclusion that it chose Florida Blue's offer because it "best represents the value of the services at issue." *See* C2C's Written Payment Determination Notice (Sept. 12, 2022), attached as **Exhibit 1**.[5]

> ## ii. *Med-Trans cannot demonstrate that the IDR award was procured by corruption, fraud, or undue means.*

Because Med-Trans generally alleges that the award should be vacated on

---

[5]      Notably, in filing a complaint rather than a proper motion, Med-Trans has attempted to avoid putting the merits of its arguments to the test at the outset, in hopes of entering full scale litigation based on the allegations in the Complaint alone. This has improperly shifted the burden to Florida Blue to show that the Complaint should be dismissed, instead of Med-Trans meeting its burden to show that sufficient grounds exist for judicial review. As a result, Med-Trans may seek to prevent the Court from considering documents outside the Complaint that would otherwise be reviewable attached to a motion or the corresponding response. Either way, however, the Court should feel free to consider the Exhibits hereto. If the Court construes the filing as a motion, it is permitted to review the documents attached here to what would be a response. Even if the Court considered that the Complaint is proper, though, the Court may still consider the underlying IDR award and the other documents referenced in the Complaint and attached hereto. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."). Where a document is not physically attached to a pleading but its contents are alleged in the complaint and no party questions it, it may be incorporated by reference if it meets the centrality requirement. *Id.* Here, Med-Trans quotes the IDR award in its pleading which revolves entirely around obtaining vacatur of the same. In addition, Med-Trans cites to communications and documents received from Florida Blue, whose authenticity neither party disputes and Florida Blue attaches here, as the purported basis for its allegations of misrepresentation and undue means.

*every possible ground* under the NSA, in the interest of thoroughness, Florida Blue

will address the allegations and merits as to each ground in turn. *See* Complaint ¶ 44.

First, section 10(a)(1) of the FAA, which is incorporated by reference in the NSA,

permits vacatur when an award was procured by corruption, fraud, or undue means.

9 U.S.C. § 10(a)(1). To vacate an arbitration award based on fraud, Med-Trans is

required to meet the requirements set forth in *Bonar v. Dean Witter Reynolds, Inc.,*

835 F.2d 1378, 1383 (11th Cir. 1988):

> First, it "must establish fraud by clear and convincing evidence." *Id.*
> "Second, the fraud must not have been discoverable upon the exercise
> of due diligence prior to or during the arbitration." *Id.* Finally, [it] "must
> demonstrate that the fraud materially related to an issue in the
> arbitration." *Id.*

*O.R. Sec., Inc.*, 857 F.2d at 748. Here, Med-Trans does not allege any fraud on the

part of Florida Blue or C2C, and certainly does not present clear and convincing

evidence.

Med-Trans does contend that "Florida Blue secured the award through undue

means . . ." Complaint ¶ 44. "Undue means, warranting a vacatur of award, include

measures equal in gravity to bribery, corruption, or physical threat to an arbitrator."

*V5 Invs., LLC v. GoWaiter Bus. Holdings, LLC*, 210 F. Supp. 3d 1329, 1332 (M.D.

Fla. 2016) (quoting *Liberty Sec. Corp. v. Fetcho*, 114 F. Supp. 2d 1319, 1321 (S.D.

Fla. 2000)). Nothing like that is alleged here. Instead, Med-Trans alleges without

any facts in support that Florida Blue

withheld from Med-Trans, in violation of federal law, information it was required to disclose and that Med-Trans needed in order to adequately prepare its arbitration submission and final payment offer. It made its initial misrepresentation of facts on the EOB issued for the claim, which was provided to C2C. Then, it misrepresented the facts by submitting a purported QPA that was not properly calculated under federal law. These actions were taken in bad faith and to secure an undue advantage in the IDR process.

Complaint ¶ 45. Med-Trans additionally alleges that "[*u]pon information and belief*, Florida Blue's QPA does not comply with the statutory requirements of the NSA," and "[*u]pon information and belief*, Florida Blue therefore submitted in bad faith to C2C a QPA that did not comply with federal law and thereby made a misrepresentation of fact to C2C that it had been provided the QPA for the claim." Complaint ¶ 42 (emphasis added). Med-Trans's mere speculation and supposition as to the bad faith it seeks to accuse Florida Blue of is insufficient to sustain a motion to vacate an arbitral award. Its allegations are entirely conclusory and even if true, do not rise to the level of "undue means" warranting judicial review of an IDR award. Florida Blue's purported failure to disclose information or miscalculate the QPA is not "equal in gravity to bribery, corruption, or physical threat to an arbitrator." Thus, Med-Trans's allegations are insufficient to vacate the award on these grounds.

### iii.   *Med-Trans did not even allege, let alone show, evident partiality or corruption on the part of C2C.*

Under the NSA a certified IDR entity is obligated to disclose those facts that "create a reasonable impression of partiality, or put another way, information which

would lead a reasonable person to believe that a potential conflict exists." *Univ.*

*Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1339 (11th

Cir. 2002) (internal citations and quotations omitted). "The alleged partiality must

be direct, definite and capable of demonstration rather than remote, uncertain and

speculative." *Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc.*, 146

F.3d 1309, 1312 (11th Cir. 1998). Importantly,

> [t]he burden of proof for vacating an arbitration award based upon
> alleged bias is a heavy one. The party must demonstrate that the
> arbitrator had a personal interest in the proceedings, whether pecuniary
> or otherwise, which would have biased his or her judgment in the
> proceedings.

*Austin S. I, Ltd. v. Barton-Malow Co.*, 799 F. Supp. 1135, 1142 (M.D. Fla. 1992)

(citing *Drexel Burnham Lambert, Inc. v. Pyles*, 701 F. Supp. 217, 220 (N.D. Ga.

1988)).

In the Complaint, Med-Trans claims the IDR award should be vacated

because

> C2C revealed evident partiality, committed prejudicial misbehavior,
> and exceeded its powers by using an illegal presumption in favor of the
> undisclosed QPA.

Complaint ¶ 46. Med-Trans's allegations of partiality are entirely conclusory and do

not comport with the meaning of "partiality" under the FAA as incorporated by the

NSA. Med-Trans has not alleged that C2C has any personal interest in the

proceedings or that its business interests compromised its judgment in issuing the

arbitral award such that a potential conflict could exist. In fact, just the opposite, Med-Trans alleges that "C2C currently charges $349 per IDR dispute. This is the amount it receives no matter how much, or how little, time it spends on the dispute." *Id.* ¶ 20. Thus, Med-Trans fails to set forth "information which would lead a reasonable person to believe that a potential conflict exists," *see Univ. Commons-Urbana, Ltd.*, 304 F.3d at 1339, and Med-Trans is not entitled to judicial review or vacatur of the IDR award on this basis.

### iv.  *Med-Trans does not allege that C2C is guilty of misconduct but instead merely disagrees with its decision.*

Med-Trans does not allege or present evidence that C2C refused to postpone a hearing upon sufficient cause, refused to hear evidence pertinent and material to the controversy, or any other misbehavior by which Med-Trans's rights were prejudiced. Med-Trans merely contends, without any support, that "the award makes no mention of the specific, credible evidence submitted by Med-Trans in support of a higher payment." Complaint ¶ 49.

> Arbitrators enjoy wide latitude in conducting an arbitration hearing. When a party challenges an evidentiary decision of the arbitration panel, a federal court may vacate the award only if the arbitrator's refusal to hear pertinent and material evidence prejudiced the rights of the parties to the arbitration proceedings.

*Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 828 (11th Cir. 2011) (citing *Rosensweig v. Morgan Stanley & Co.,* 494 F.3d 1328, 1333 (11th Cir. 2007). That the award did not specifically mention certain evidence is not the same as C2C

refusing to <u>hear</u> pertinent and material evidence. Med-Trans fails to point to any evidence that C2C refused to hear. Instead, Med-Trans simply disagrees with C2C's decision and feels that its evidence supports a higher payment. This is not grounds for the Court to waste judicial time and resources reconsidering the evidence presented to C2C. If parties could appeal IDR decisions to a court every time they disagreed with the result it would render the alternative dispute resolution process redundant and useless. Because Med-Trans does not provide evidence of any misconduct on the part of C2C, it is not entitled to vacatur of the award on this basis.

### v.     *Med-Trans has not shown that C2C exceeded its powers.*

With regard to the final ground for vacating an arbitration award under the NSA, Med-Trans claims that C2C exceeded its power by again alleging that C2C used "an illegal presumption in favor of the undisclosed QPA." In other words, C2C "exceeded its powers by acting contrary to the law." *See White Springs Agric. Chemicals, Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1283 (11th Cir. 2011).

But courts cannot review an arbitrator's "award for underlying legal error." *Id.* (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008); *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1323-24 (11th Cir. 2010)); *see also Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1301–02 (11th Cir. 2015)("To vacate an award under § 10(a)(4), 'it is not enough to show that the arbitrator committed an error—or even a serious error.'"). Med-Trans has not only failed to sufficiently show

17

that C2C applied an "illegal presumption" but even if its allegations are taken as true they do not state a cognizable basis for judicial review of an IDR award.

**vi.    The NSA does not provide a fifth ground for judicial review for misrepresentation or fraud and, regardless, Med-Trans has not alleged or shown any misrepresentations.**

Med-Trans attempts to create a "fifth" ground for judicial review by relying on a separate provision of the NSA. Med-Trans alleges in its Complaint that "42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) expressly authorizes judicial review under the circumstances at issue herein," Complaint ¶ 12. Section 300gg-111(c)(5)(E)(i)(II) incorporates the <u>four</u> grounds for vacating an arbitration award found in the FAA. Med-Trans wishes to tack on a "fifth" ground for judicial review of the award by alleging that Florida Blue made misrepresentations to C2C. Med-Trans extracts this purported "fifth" ground for judicial review, *see* Complaint ¶ 44, from section 300gg-111(b)(5)(E)(i)(I) which states that a determination of a certified IDR entity "shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim."

The NSA is clear that an arbitration award "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9." Thus, the grounds set forth in section 10(a) of the FAA are the <u>exclusive</u> grounds for judicial review of a determination by a certified IDR entity. If

18

Congress intended fraud or misrepresentation of facts presented to the IDR entity to constitute an additional ground for judicial review it would have used such language or included it in subsection II. Instead, Congress separately explained that awards are binding and included fraud and misrepresentation as exceptions, such that they could be asserted as affirmative defenses to enforcement of an award, circumstances not at issue here.

Moreover, the IDR Guidance for Certified IDR Entities provides that if a certified IDR entity or a party such as Med-Trans believes the QPA has been calculated incorrectly, the party should notify the Departments through the IDR portal and the Departments can take any action regarding the QPA's calculation. See Depts. of Health & Human Servs., Labor, and the Treasury, Federal Independent Dispute Resolution (IDR) Process Guidance for Certified IDR Entities (2022)[6] at 19]. Florida Blue provided information regarding how it calculated its QPA to Med-Trans as early as April 7, 2022, *see* April 7, 2022 Florida Blue Response, attached as **Exhibit 2**. Med-Trans could (and should) have notified the Departments that it was concerned the calculation was improper at any point during the Open Negotiation Period or the IDR process. Med-Trans cannot now, for the first time, raise issues with how Florida Blue calculated the QPA with this Court, guised as a

---

[6]         https://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/Federal-Independent-Dispute-Resolution-Process-Guidance-for-Certified-IDR-Entities.pdf

#180644994_v3

claim for misrepresentation, in an attempt to seek vacatur of an unfavorable IDR award.

Further, the crux of Med-Trans's misrepresentation claim is that Florida Blue "did not disclose what its QPA was on the EOB or during the ONP." Complaint ¶ 37. However, Med-Trans acknowledges that Florida Blue provided the QPA amount as the amount allowed in the EOB, *see* Complaint ¶ 38; *see also* Member Health Statement, attached as **Exhibit 3**, dated March 18, 2022 - April 8, 2022 (stating amount allowed for instance code A0431 was $6,684.05 and for code A0436 was $4,488.62, the same numbers submitted to C2C), and Florida Blue provided these same numbers again during the Open Negotiation Period, *see* June 16, 2022 Florida Blue ONP Proposal, attached as **Exhibit 4**, (again stating the amount allowed for code A0431 was $6,684.05 and for code A0436 was $4,488.62). Thus, to the extent Med-Trans complains that Florida Blue "concealed" and made "misrepresentations" regarding the QPA and how it was calculated, its contentions are entirely baseless and untimely. They certainly do not allow Med-Trans to manufacture a "fifth" ground for judicial review.

### *Med-Trans's Request for Attorney's Fees Should Be Stricken*

With regard to Med-Trans's request for attorney's fees, "[i]n the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W.*

*Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). Applying this rule, courts "follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Id.* (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). Here, Med-Trans includes a request for attorney's fees and costs at the conclusion of its Complaint. Complaint ¶ 53 ("Med-Trans further requests its attorney's fees and costs, and any other just and proper relief.").

Med-Trans has not identified, and Florida Blue has not located, any statute which would provide for an award of attorney's fees here. Further, there is no contractual provision providing for such relief. Accordingly, Med-Trans's request for attorney's fees in paragraph 53 of the Complaint should be stricken pursuant to Federal Rule of Civil Procedure 12(f). *See* Fed. R. Civ. P 12(f) (the court can strike from a pleading any immaterial or impertinent matter); *see also Italiano v. Jones Chemicals, Inc.*, 908 F. Supp. 904, 907 (M.D. Fla. 1995) (striking the plaintiff's request for attorney's fees where plaintiff "pled no statute or contract that would authorize an award of attorney's fees.").

## CONCLUSION

For the foregoing reasons, Defendant Blue Cross and Blue Shield of Florida, Inc., respectfully requests the entry of an Order (i) dismissing Plaintiff's Original

#180644994_v3

Complaint, or alternatively, denying the relief requested therein, and (ii) striking

Plaintiff's request for an award of attorney's fees.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies that he conferred

with counsel for Plaintiff via email, and Plaintiff's counsel opposes the relief

requested by this motion.

**HOLLAND & KNIGHT LLP**

*/s Timothy J. Conner*
Timothy J. Conner, FBN 767580
timothy.conner@hklaw.com
Jennifer A. Mansfield, FBN 0186724
Jennifer.mansfield@hklaw.com
Taylor M. Fleming, FBN 1026439
Taylor.fleming@hklaw.com
Secondary: Camille.winn@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
Telephone:  (904) 353-2000
Facsimile:  (904) 358-1872
*Attorneys for Defendant Blue Cross
and Blue Shield of Florida, Inc.*

22

#180644994_v3

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 2, 2022, the foregoing was filed using the CM/ECF filing system, which will provide copies *via* electronic mail to the following recipients:

Lanny Russell, Esq.
SMITH HULSEY & BUSEY
One Independent Drive, Ste. 3300
Jacksonville, FL 32202
Lrussell@smithhulsey.com

Adam T. Schramek, Esq.
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd, Ste. 1100
Austin, TX 78701-4255
Adam.schramek@nortonrosefulbright.com
Abraham Chang, Esq.
1301 McKinney, Ste. 5100
Houston, TX 77010-3095
*Attorneys for Plaintiff*


                            */s/ Timothy J. Conner*
                            Attorney

#180644994_v3